IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD EDWARDS,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| SANDRA MORGAN,<br>*Defendant* | : <br> : <br> : | NO. 19-1897 |

## MEMORANDUM

PRATTER, J.                                                                   NOVEMBER 23, 2020

Gerald Edwards is a frequent visitor to this Court. He has sued in federal court no less than seven times based on proceedings initiated against him in the Bucks County Court of Common Pleas and the related citations and inspections of his property.[1] This is the second time Mr. Edwards has sued Ms. Morgan, the officer tasked with re-inspecting his property.

For the reasons that follow, the Court grants Ms. Morgan's Motion for Summary Judgment and her Motion to Strike the "Criminal Complaint."

### BACKGROUND AND PROCEDURAL HISTORY

Garbage, trash, and decaying matter had accumulated around Mr. Edwards's property, creating unsafe and unsanitary conditions. For this, Mr. Edwards was convicted of six local property code violations. He was assessed a $1,000 fine and court costs for each of the violations. Doc. No. 11-6 (Bucks County Court June 8, 2018 Hr'g Tr.) at 87:13-89:12.[2] Judge Baldi of the

---

[1] *See, e.g., Edwards v. Morgan*, Civ. A. No. 18-4776 (E.D. Pa. 2018) (dismissed for failure to prosecute); *Edwards v. McDermott*, Civ. A. No. 18-4777 (E.D. Pa. 2018) (dismissed for failure to prosecute); *Edwards v. Rice*, Civ. A. No. 19-3559 (E.D. Pa. 2019) (dismissed with prejudice for failure to state a claim); *Edwards v. Baranoski*, Civ. A. No. 19-4609 (E.D. Pa. 2019) (on appeal); *Edwards v. Freed*, Civ. A. No. 19-4851 (E.D. Pa.) (dismissed with prejudice); *Edwards v. Bucks Cty. Corr. Facility*, Civ. A. 19-4923 (E.D. Pa. 2019) (dismissed for failure to prosecute).

[2] Mr. Edwards appeared in Bucks County court on both June 8 and June 29, before Judges Baldi and Fritsch, Jr., respectively. Both hearings addressed Mr. Edwards's various property code violations at 1652

1

Bucks County Court of Common Pleas offered Mr. Edwards a choice: if Mr. Edwards took substantial steps to bring his property into compliance—which the township would need to confirm—the court would reserve the right to suspend the fines. Doc. No. 11-6 (Bucks County Court Hr'g Tr. June 8, 2018) at 89:21-90:16. Mr. Edwards confirmed that he would bring the property into compliance:

> THE COURT: Sir, you have said you can clean the place up, and you are going to do that, right?
> MR. EDWARDS: Yes. I'll just work, like, four or five hours a day I have emphysema, but I'll manage.

*Id.* at 94: 1-6.

Roughly three weeks later, Mr. Edwards appeared before Judge Fritsch, Jr., also of the Bucks County Court of Common Pleas. Mr. Edwards had apparently not remedied the property. Judge Fritsch, Jr. offered Mr. Edwards the same choice as Judge Baldi:

> THE COURT: Mr. Edwards, I will state that if this situation is remedied within two weeks of today's date, that is if containers are removed and some of the rotting wood is removed from the property, I would consider abating the fine, in other words not requiring that, if the condition were to be abated within two weeks of today's date.

Doc. No. 11-5 (Bucks County Court Hr'g Tr. June 29, 2018) at 85:4-10.

But, the court informed Mr. Edwards, he would need to document his cleaning efforts by contacting the township so that it could re-inspect and verify that he was indeed compliant.

> THE GOVERNMENT: I assume that there would be a provision by which we could go and verify if that's the case.

---

Prospect Avenue, which local records reflect is owned by Mr. Edwards. Ms. Morgan was not a witness at the June 29 proceeding.

There are two minor inconsistencies in Ms. Morgan's moving papers. First, she interchangeably refers to the two hearings as being before Judge Baldi, which is incorrect. Second, her declaration refers to her visiting a property on Ramble Road. Prospect Avenue is off Ramble Road. However, the remainder of her declaration is consistent with the six property code violations and the dates in question.

2

> THE COURT: Yes. If that can be verified by the Bucks County Department of Health and if they notify me within two weeks that the condition has been remedied, then I will very seriously consider abating the fine that I have just imposed.

*Id.* at 85:12-19.

Sandra Morgan is a Code Enforcement Officer for Middletown Township in Bucks County. She had previously visited the property to draft the property violations and was tasked with re-inspecting Mr. Edwards's property following the hearings. On each of her two visits to re-inspect, Mr. Edwards alleges that Ms. Morgan violated his Fourth Amendment rights by entering and searching his property without a warrant.

Roughly two weeks after the hearing before Judge Fritsch, Jr., Ms. Morgan visited the property with an unidentified police officer. Upon seeing Ms. Morgan and the officer approaching the driveway, Mr. Edwards alleges that he attempted to close and lock the gate in his driveway to prevent them from entering. He further contends that the police officer swung open the gate, striking him in the process. Mr. Edwards, who alleges he suffers from emphysema, claims he lost his breath due to the struggle. Ms. Morgan denies that there was any altercation between the officer and Mr. Edwards, including that Mr. Edwards was struck with the gate. Mr. Edwards admitted that Ms. Morgan did not push on the gate, nor did she direct the officer to shove Mr. Edwards. Doc. No. 11-7 (Edwards Depo. Tr.) at 44:7-11.

Roughly four months later, Ms. Morgan visited Mr. Edwards. Mr. Edwards alleges that she opened a mailbox, which is located on the public street, and removed his mail. The mailbox is not located on his property and functions as a communal repository for the properties in the immediate area. Ms. Morgan was holding papers in her hand, which she maintains were the violation letters needed to conduct the re-inspection and which she brought from her office.

Mr. Edwards alleges that those papers were his mail that she removed from his mailbox. Mr. Edwards did not see Ms. Morgan remove anything from the mailbox.

The Court previously screened and dismissed as frivolous most of Mr. Edwards's claims except for the two pending § 1983 claims. *Edwards v. Morgan*, No. 19-CV-1897, 2019 WL 2407478, at *3 (E.D. Pa. June 5, 2019). The parties have since completed discovery: Mr. Edwards was deposed earlier this year, and Ms. Morgan submitted a sworn declaration.

Pending are two motions: Ms. Morgan has moved for summary judgment on the two outstanding § 1983 claims. Doc. No. 11. Mr. Edwards, proceeding *pro se*, filed five untimely responses in opposition. Doc. Nos. 15, 17, 18, 19, 20. Mr. Edwards's "responses," as are typical of his filings,[3] are a compendium of voluminous and duplicative exhibits. Rather than address Ms. Morgan's arguments, he appears to rehash the county court proceedings and continues to dispute the basis for the code violations.

Mr. Edwards also filed a notice that he was "filing criminal violations against" Ms. Morgan and her attorney for, among other things, "falsifying documents, evidence, [and] obstruction[] of justice." Doc. No. 21. Ms. Morgan moves to strike the "criminal complaint." Doc. No. 22. The Court addresses both of these motions.

## LEGAL STANDARDS

### I.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable

---

[3]  *See, e.g., Edwards v. Bucks Cnty. Corr. Facility*, No. 19-CV-4923, 2019 WL 5579486, at *1 (E.D. Pa. Oct. 29, 2019).

4

jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. One of the principal purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After the moving party has met its initial burden, the non-moving party must set out "specific facts showing a genuine issue for trial." *Betts*, 621 F.3d. at 252. The non-moving party may do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to make a "showing sufficient to establish the existence of an element essential" to its case on which it will bear the burden at trial. *Celotex*, 477 U.S. at 322.

## II.     Motion to Strike

A court has discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "Scandalous material

improperly casts a derogatory light on someone, most typically on a party to the action." *Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 572 (E.D. Pa. 2017). Motions to strike "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). However, they are generally disfavored. Courts generally deny a motion to strike "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.*

## DISCUSSION

### I. Motion for Summary Judgment

Ms. Morgan moves for summary judgment on both § 1983 claims for alleged violations of Mr. Edwards's Fourth Amendment rights.

#### A. Altercation at the Gate

Construed liberally, Mr. Edwards appears to claim that the police officer who accompanied Ms. Morgan to re-inspect the property used excessive force. Mr. Edwards alleges that he and the officer were each pulling on the gate that runs across his driveway. Mr. Edwards contends that, during the struggle, the officer struck him with the gate, causing him to temporarily lose his breath. Doc. No. 11-7 (Edwards Depo. Tr.) at 32. Ms. Morgan denies any incident involving the gate. Regardless, she maintains that this dispute is not material because she cannot be liable for the police officer's conduct.

Mr. Edwards did not bring a claim against the police officer. Nor does Mr. Edwards allege that Ms. Morgan, in her individual capacity, used an excessive level of force in violation of the Fourth Amendment. Indeed, he admitted that she did not participate in the alleged altercation with the gate. Doc. No. 11-7 (Edwards Depo. Tr.) at 42-43. So, the only issue is whether Ms. Morgan

could be liable under a theory of supervisory liability.[4] Relevant here, a supervisor may be personally liable under § 1983 if "she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Even assuming that Ms. Morgan had supervisory authority—which the Court seriously doubts—it is undisputed that Ms. Morgan did not directly use force, nor did she direct any use of force. Mr. Edwards testified that Ms. Morgan did not help the police officer in pushing on the gate. And, he testified that she did not instruct the officer "to hit [Mr. Edwards] with the gate" Doc. No. 11-7 (Edwards Depo. Tr.) at 44:9-11. Rather, Ms. Morgan allegedly instructed the officer to "[b]etter go down and get that gate before he closes it." Doc. No. 11-7 (Edwards Depo. Tr.) at 43:13-15. Even crediting Mr. Edwards's allegations, the alleged direction falls short of authorizing excessive force as a matter of law. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Absent more, Ms. Morgan's statement does not authorize use of force against Mr. Edwards. Nor could a reasonable jury find on these facts that Ms. Morgan instructed that the officer use force (let alone excessive force) on Mr. Edwards.

There is no dispute that Ms. Morgan did not herself use force nor did she authorize any force. Accordingly, the Court grants summary judgment in Ms. Morgan's favor for the portion of

---

[4] At the screening stage, the Court understood "Mr. Edwards to be pursuing Fourth Amendment claims against Ms. Morgan for entering his property . . . and searching through his mailbox." *Edwards v. Morgan*, No. 19-CV-1897, 2019 WL 2407478, at *3 (E.D. Pa. June 5, 2019). At least at that stage, supervisory liability was not included as a possible ground.

Mr. Edwards's claim that arises from the alleged shoving match between him and the police officer over the gate.

### B. Consent to Search Property

Ms. Morgan also asserts she is entitled to summary judgment on Mr. Edwards's § 1983 claim for entering Mr. Edwards's property without a warrant to conduct the re-inspection.

The Fourth Amendment protects against "unreasonable searches and seizures. U.S. Const. amend. IV. It is well established that a search inside a home without a warrant is presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). Relevant here, the Supreme Court has also held that a warrant is required for a home inspection even when the inspection is part of a routine regulatory scheme. *Camera v. Municipal Court*, 387 U.S. 523, 530 (1967) ("[W]e cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely 'peripheral.'"). In *Maffucci v. City of Phila.*, the court held that, absent consent, the code inspector must obtain a warrant to search the plaintiff's home for permit violations. 1999 WL 320940, at *6 (E.D. Pa. May 20, 1999).

However, it is also well settled that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).[5] Whether Ms. Morgan's actions violated Mr. Edwards's rights hinges on whether Mr. Edwards gave his consent for Ms. Morgan to enter his property. The Court finds that Mr. Edwards did so consent as part of an agreement reached with the Bucks County Court of Common Pleas.

---

[5] To be sure, the facts in *Bustamonte* differ from those here. *Bustamonte* involved consent given contemporaneously to an officer to search a car that was stopped for traffic violations. Here, Mr. Edwards consented on the record, in response to the court's proposed agreement.

8

The hearing records and deposition testimony reflect that Mr. Edwards agreed to the search and that the consent was clearly for Mr. Edwards's financial benefit. During the county court proceedings, Mr. Edwards acknowledged that he would clean his property. Doc. No. 11-6 (Bucks County Court June 8, 2018 Hr'g Tr.) at 87:10-12[6], 94:1-6[7]. And, during his deposition, Mr. Edwards reiterated[8] that he gave this consent and his understanding as to why Ms. Morgan visited his property:

> Q. Did you know and agree that the township could come out to your property and do a reinspection? A. Yes.

Doc. No. 11-7 at 41:1-4.

But the consent must also be given voluntarily for a waiver of Fourth Amendment rights to be effective. Voluntariness is a fact-bound question "to be determined by from the totality of all the circumstances." *Bustamonte*, 412 U.S. at 222. Such an inquiry considers "the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting party." *U.S. v. Givan*, 320 F.3d 452,

---

[6] MR. EDWARDS: If you want me to just clean up the property, we can do that.

[7] THE COURT: Sir, you have said you can clean the place up, and you are going to do that, right?
MR. EDWARDS: Yes. I'll just work, like, four or five hours a day I have emphysema, but I'll manage.
THE COURT: Okay, and show them you are doing that. Start taking steps to clean that up....

[8] At his deposition, Mr. Edwards repeated his understanding that the township could reinspect his property:
> Q. Okay. Did you also understand at the hearing that in order for Judge Baldi to abate your fines, he had to be notified by the township that you—as you promised, had fixed up the property, right? Is that also correct? A. Yeah. Doc. No. 11-7 (Edwards Depo. Tr.) at 39:18-40:1

> Q: And because of the time frame, the hearing was held on June 8th and this incident occurred on July 12th. Do you think that's why Ms. Morgan and the police officer were there, to do the reinspection that you had agreed to? A. Yeah, I guess so. Doc. No. 11-7 at 41:5-12.

459 (3d Cir. 2003). Here, there was no finding by the court that Mr. Edwards's consent—given on two separate occasions—was not given voluntarily (nor does the record indicate that he was coerced into agreeing). Mr. Edwards consented to the court's proposal on the record. And that agreement was made for Mr. Edwards's benefit—he agreed to allow the township entry to reinspect the property in exchange for the court to consider abating the thousands of dollars in fines.[9] In this context, it was not unreasonable for Ms. Morgan to rely on the consent Mr. Edwards provided in the context of an agreement with the court. *Contra Dice v. Johnson*, 711 F. Supp. 2d 340, 367-68 (M.D. Pa. 2010) (genuine issue of material fact existed regarding whether property owner voluntarily consented to search of his property where plaintiff testified that he was repeatedly threatened by police and warned that refusal was not in his "best interest").

Nor does Mr. Edwards introduce evidence to challenge that his consent was involuntary or somehow coerced. Indeed, his deposition testimony reflects that he understood the purpose of Ms. Morgan's visit—to which he had agreed. Mr. Edwards has not met his burden of showing that he did not consent to the township's reinspection.[10]

Accordingly, based on Mr. Edwards's consent given in the court hearings, his deposition testimony, and the Court of Common Pleas' authorization, the Court finds that Ms. Morgan's warrantless re-inspection did not violate Mr. Edwards's Fourth Amendment rights.[11]

---

[9] Based on the record testimony, Mr. Edwards is not currently financially able to pay this amount. Doc. No. 11-6 at 81:3-18.

[10] That said, upon seeing Ms. Morgan and the police officer approaching, Mr. Edwards attempted to close and lock the gate in his driveway to prevent them from entering. Doc. No. 11-1 (SUMF) ¶ 10. But to the extent that those actions could be construed as a revocation, Ms. Morgan was operating with the consent that Mr. Edwards gave on the record. At a minimum, she was charged with determining whether the property had been brought into compliance. Nor does Mr. Edwards argue in his responses that he revoked his consent.

[11] Mr. Edwards appears to be exploiting this situation: having entered into the agreement with the township, he should not be able to renege to manufacture a § 1983 claim for damages.

### C. Qualified Immunity

Ms. Morgan also asserts that she is entitled to qualified immunity because her reliance on Mr. Edwards's consent to enter was reasonable and she did not violate clearly established law.

Qualified immunity shields government officials performing discretionary functions from civil damages provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because Ms. Morgan claims it as a defense, it is her burden to establish she is entitled to qualified immunity. *Burns v. PA Dep't of Corrections*, 642 F.3d 163, 176 (3d Cir. 2011). The Court must determine "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018). Summary judgment is not appropriate if, crediting the plaintiff's version of the facts, the defendant violated plaintiff's clearly established constitutional rights. *Bush v. Renegar*, No. CV 18-327, 2020 WL 5408065, at *5 (E.D. Pa. Sept. 9, 2020). Qualified immunity is likewise unavailable to the defendant who knows or should know that he is acting outside of the law.

For purposes of qualified immunity, the Court must first determine whether Ms. Morgan violated a constitutional right. If that is the case, the Court must next assess whether the constitutional right in question was "clearly established" at the time Ms. Morgan acted. The Third Circuit Court of Appeals recently expressed that a "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018). The "right need only have

11

a sufficiently clear foundation in then-existing precedent"; directly on-point case law is not required. *Id.*

For the reasons already discussed, Ms. Morgan's conduct did not violate Mr. Edwards's constitutional rights. Because there is no constitutional violation, the qualified immunity inquiry concludes at the first step.[12] *Haefner v. City of Phila.*, 2005 WL 525404, at *2 (E.D. Pa. Mar. 4, 2005).

## D. Search of Mailbox

Ms. Morgan also moves for summary judgment on the § 1983 claim arising from her visit on October 22, 2018, in which Mr. Edwards alleges that Ms. Morgan removed mail from a mailbox that Mr. Edwards has used on occasion. A threshold element to a Fourth Amendment claim is that something or someone has been searched or seized. Ms. Morgan maintains that there is no competent evidence that she removed items belonging to Mr. Edwards from the mailbox on which to sustain a Fourth Amendment violation. The Court must agree.

Mr. Edwards's suspicion that Ms. Morgan removed any mail belonging to him remains just that—a mere suspicion. *First*, Mr. Edwards conceded that he did not see Ms. Morgan reach inside the mailbox and he did not see her remove anything from the mailbox. Doc. No. 11-6 (Edwards Depo. Tr.) at 59:16-18. Instead, based on Ms. Morgan's proximity to the mailbox and the fact that the mailbox lid was open, he surmised that she had reached inside. Both Mr. Edwards's deposition testimony and contemporaneous evidence contradict his suspicions. Mr. Edwards admitted that

---

[12] Had the Court found that Mr. Edwards's Fourth Amendment rights were violated, the Court would then consider Ms. Morgan violated a "clearly established" right. "It is well established that when a city inspector *without consent or court authorization* enters a property for purposes of inspecting for Code violations a constitutional violation is found." *Haefner v. City of Phila.*, 2005 WL 525404, at *2 (E.D. Pa. Mar. 4, 2005) (emphasis added). Relying on Supreme Court precedent in *Camera v. Municipal Court*, 387 U.S. 523 (1967), the *Haefner* court announced that that constitutional violation arising from an entry absent consent or authorization is clearly established. *Id.* However, because the Court finds that Ms. Morgan acted both on Mr. Edwards's consent and the court's authorization, she is entitled to qualified immunity.

12

the lid sometimes fell off or hung because it is "an old box." Doc. No. 11-7 (Edwards Depo. Tr.) at 58:4-11. So Mr. Edwards acknowledged that the lid would hang off without a person opening the box. To the extent there were pieces of mail on the ground nearby the mailbox post, Ms. Morgan stated in her declaration that those were there when she arrived, which is why she photographed them to document their placement. Doc. No. 11-8 at 2 (Morgan Declaration). The photograph of the envelopes was then introduced at Mr. Edwards's deposition. And Mr. Edwards did not challenge the photograph at his deposition. Rather, he repeated his suspicion that he was there at the "right place, right time." Doc. No. 11-7 (Edwards Depo. Tr.) at 63:2-3.

*Second*, Mr. Edwards failed to adduce any evidence that the letters Ms. Morgan was holding were not the violation letters she brought from her office. In her sworn declaration, Ms. Morgan stated that the letters that Mr. Edwards saw her holding were the violation letters which she brought from her office, necessary for her to conduct a re-inspection. Doc. No. 11-8 at 2 (Morgan Declaration). In his response, Mr. Edwards described the "salmon colored cards" in Ms. Morgan's hands, which corroborates Ms. Morgan's declaration. Doc. No. 17.

Mr. Edwards has not adduced any evidence that Ms. Morgan tampered with his mail beyond conjecture. Conclusory allegations are insufficient to overcome a motion for summary judgment. *Betts*, 621 F.3d at 252. Absent evidence to support his allegation that Ms. Morgan accessed the mailbox—an element on which he would have the burden of proof at trial—Mr. Edwards cannot sustain a Fourth Amendment claim. *Celotex*, 477 U.S. at 322.

Even if Ms. Morgan had opened the box—which the evidence does not support—Ms. Morgan argues she is entitled to summary judgment as a matter of law. This is because Mr. Edwards did not have any reasonable expectation of privacy in a mailbox he shared with other

13

addresses. Ms. Morgan does not cite to any authority for this proposition.[13] To claim a Fourth Amendment violation, a person must have a "justifiable," "reasonable," or "legitimate expectation of privacy" that has been invaded by the Government. *United States v. Werdene*, 188 F. Supp. 3d 431, 443 (E.D. Pa. 2016) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

Ms. Morgan's argument proceeds based on an alleged diminished expectation of privacy. Mr. Edwards testified that he sometimes retrieves mail for others there and that he "expected that other people [would] go through that mailbox to take out letters." Doc. No. 11-7 (Edwards Depo. Tr.) at 52:18-19; 68:3-6; 69:1-5. The mailbox, which is neither owned by him nor on his property, *id.* at 56:17-18, is shared among multiple people with properties on the same street, *id.* at 5:17-19; 50:6-12; 54:2-8; 57:10-13. But to the extent that Mr. Edwards retrieves his neighbors' mail, it is based on an understanding among these neighbors. Mr. Edwards did not concede other people— who do not receive mail to that location, like Ms. Morgan—could access the box.

The Court need not resolve the issue of whether Mr. Edwards had a diminished expectation of privacy in a shared mailbox, because he has not introduced any evidence to create a genuine

---

[13] The majority of jurisdictions to consider whether a person has a reasonable expectation of privacy in an unsecured, outdoor mailbox have held that there is no such reasonable expectation of privacy. But these cases all involved criminal defendants' challenges to warrantless searches where the Government sought to introduce the seized items as evidence from mailboxes or post office boxes. *See, e.g., United States v. Stokes*, 829 F.3d 47 (1st Cir. 2016) (no legitimate expectation of privacy in a rented P.O. Box); *United States v. Hinton*, 222 F.3d 664 (9th Cir. 2000) (no objectively reasonable expectation of privacy in a parcel locker that cannot be individually rented); *United States v. Osunegbu*, 822 F.2d 472 (5th Cir. 1987) (minimal expectation of privacy for private post office box because postal employees would have to look at and move the mail); *United States v. Lewis*, 738 F.2d 916 (8th Cir. 1984) (no legitimate expectation of privacy in an unlocked mailbox situated in a rural area that was accessible to the public because defendant had "every expectation that government officials would regularly open the box to deliver mail"); *United States v. Green*, No. CR 19-05-BLG-SPW-02, 2019 WL 1643661 (D. Mont. Apr. 16, 2019) (no expectation of privacy in residential mailbox where resident did not endeavor to make the mailbox private). The Third Circuit Court of Appeals does not appear to have addressed this issue; recently, a Pennsylvania court acknowledged that it was an issue of first impression, before adopting the majority view. *Commonwealth v. Bell*, No. 3055 EDA 2016, 2018 WL 3211072, at *7 (Pa. Super. Ct. June 28, 2018).

The facts here, however, are slightly different because Ms. Morgan disputes the threshold issue that she searched the mailbox. Nor is she a postal worker who would otherwise ordinarily have access to a mailbox.

dispute that Ms. Morgan removed mail belonging to him. Summary judgment is thus granted to Ms. Morgan on the second § 1983 claim.

## II. Motion to Strike

Ms. Morgan also moves to strike the "criminal complaint" against her and her attorney, Fred B. Buck. Construing his notice liberally, Mr. Edwards alleges (1) that Mr. Buck intimidated Mr. Edwards during his deposition, which led Mr. Edwards into giving certain unfavorable testimony; (2) that Ms. Morgan and Mr. Buck conspired to break the law; and (3) that Ms. Morgan made false statements in her sworn declaration. Ms. Morgan moves to strike on the basis that the notice is libelous and contains unfounded accusations of illegal and unethical conduct. The Court agrees that the pleading should be stricken.

To the extent that Mr. Edwards seeks to initiate a criminal prosecution of either Ms. Morgan or Mr. Buck, he lacks the legal basis to do so. "The prosecution of violations of federal criminal law in federal court is a function of the federal government, not private parties." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 636 (E.D. Pa.), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). The Court cannot direct the filing of criminal charges. *Fake v. Phila. Court of Common Pleas*, No. CV 16-3893, 2016 WL 4039654, at *3 (E.D. Pa. July 27, 2016), *aff'd sub nom. Fake v. City of Phila.*, 704 F. App'x 214 (3d Cir. 2017).[14]

Even were such a filing cognizable—which it is not—Mr. Edwards accuses Mr. Buck of intimidation without alleging any facts. That Mr. Buck elicited admissions from Mr. Edwards that are inconvenient to Mr. Edwards's claims—without more—does not support a claim of intimidation. Moreover, the purported conspiracy between Ms. Morgan and Mr. Buck is baseless. Construed liberally, Mr. Edwards objects to the inclusion of both the June 8 and June 29, 2018

---

[14] Mr. Edwards also improperly invokes 28 U.S.C. § 636, which governs the jurisdiction and powers of magistrate judges, as the basis for his "complaint."

15

hearing transcripts as exhibits in Ms. Morgan's motion. Although Ms. Morgan was a witness at only the June 8 hearing, both hearings addressed Mr. Edwards's code violations and offered him the chance to remediate to abate the fines.[15] So the hearing transcripts are relevant to summary judgment. Their inclusion in no way supports a claim of falsifying evidence. Finally, Mr. Edwards offers nothing more than an accusation that Ms. Morgan perjured herself in her sworn declaration.[16] For these reasons, the Court will strike the unfounded complaint.

## CONCLUSION

For the reasons set out in this memorandum, the Court grants Ms. Morgan's motion for summary judgment and her motion to strike the "criminal complaint." An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[15] Throughout the county court proceedings, Mr. Edwards has contested the location of the property at issue. The June 8 hearing and Ms. Morgan's visits were to a property located at 1796 Ramble Road. Doc. No. 11-8 (Morgan Declaration).

The June 29 hearing referred to a complaint regarding a property at 1652 Prospect Avenue. Doc. No. 11-5 at 53:1-2. The Court can take judicial notice that Prospect Avenue is off Ramble Road and that the various summons and notices were sent to 1652 Prospect Avenue.

[16] Any inconsistency appears to be with regard to the exact address Ms. Morgan visited. But Ms. Morgan's declaration describes the two dates at issue in which she visited Mr. Edwards's property. And Mr. Edwards does not dispute that she twice visited his property.